STATE OF CONNECTICUT *v.* RONNIE SMITH
(AC 27009)

Flynn, C. J., and Harper and McDonald, Js.

Argued September 25, 2007—officially released May 6, 2008

*Michael Stone*, special public defender, for the appellant (defendant).

*Kathryn Ward Bare*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, former state's attorney, and *Thomas R. Garcia* and *Richard J. Rubino*, assistant state's attorneys, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Ronnie Smith, appeals from the judgments of conviction, rendered after a jury trial, of three counts of robbery in the first degree as an accessory in violation of General Statutes

§§ 53a-134 (a) (4) and 53a-8 (a), and two counts of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-48 (a). The defendant was charged in two separate, long form informations. One charged the defendant in two counts relating to a robbery that occurred at a Kentucky Fried Chicken fast food restaurant (KFC) in West Hartford on or about September 15, 2003. The other charged the defendant in three counts relating to robberies that occurred at a CVS pharmacy (CVS) in Hartford on or about October 1, 2003. On the state's motion, the court consolidated the defendant's cases with the cases against Jamal Bazemore and Jordi Kerr for both the KFC and the CVS robberies. Subsequently, the cases were tried to the jury, and the defendant was found guilty on all charges. On appeal, the defendant claims that the evidence adduced at trial was insufficient to establish his identity as a perpetrator of the charged crimes beyond a reasonable doubt. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. On September 15, 2003, the defendant and three other men, Bazemore, Kerr and Negus Jones were in a black 1998 Nissan Maxima that had been stolen by Bazemore on September 14, 2003, to use in a robbery and later to abandon. The four men decided to commit a robbery at a KFC on New Britain Avenue in West Hartford. Upon arriving at the KFC during business hours, shortly after 11 p.m., the men agreed that Bazemore, the driver, would remain in the car while the defendant, Jones and Kerr would enter the restaurant. The three men, who were wearing hooded sweatshirts, face coverings and gloves, entered the restaurant carrying handguns. The defendant wore a white "Jason mask."[1] There were no customers in the KFC at the time. After

---

[1] A "Jason mask" is a white hockey mask similar to that worn by the character Jason in the "Friday the Thirteenth" horror movie series.

the men entered the restaurant, the defendant approached the assistant manager, Vivette Wright-Wilson, who had seen their black car approach near the doorway, and ordered her to empty her pockets. From her pockets, Wright-Wilson gave the defendant her money, $22. Jones approached another assistant manager, Mark Hamilton, and, at gunpoint, compelled him to open the cash register. After Hamilton opened the register, Jones removed all of the money. As the defendant and Jones collected money, Kerr kept lookout over everybody in the KFC and made sure nobody left the premises. The defendant subsequently approached Hamilton and threatened to shoot him if he did not open a second cash register. After Hamilton opened the second register, the defendant took the money and immediately exited the restaurant with Jones and Kerr. After the robbery, Hamilton pushed a panic button to contact the West Hartford police.

Upon leaving the store, the three men got back into the stolen 1998 Maxima, turned left onto New Britain Avenue and then took an immediate right turn onto Hollywood Avenue. At that time, Carol Kinnane was walking down Stanwood Avenue and observed a black Nissan Maxima without lights driving down Hollywood Avenue. After the car stopped on a side street out of Kinnane's sight, Kinnane heard doors closing and heard several people running toward her. Kinnane then saw four men, one of whom was wearing a white mask, run around the corner. The man in the white mask said it was a "rush," and all four got into the defendant's car, a gray and red Mercury Sable, and drove away. The four men previously had parked the defendant's car on Stanwood Avenue earlier that night for use after the robbery. After the men drove away, Kinnane walked to the Maxima, which still had the motor running, to determine if anyone injured was in the car. Then, at

Kinnane's request, a neighbor called the police, who immediately responded.

The four men took the defendant's car to Bazemore's house on Cornwall Street in Hartford, where they changed their clothing and equally divided the money from the robbery. Bazemore remained at his house while the defendant, Jones and Kerr left in the defendant's car. Approximately two hours after the KFC robbery, Paul Cicero, a Hartford police officer, observed a gray and red Mercury Sable speeding southbound on Maple Avenue. Cicero, who was aware that a similar vehicle had been used in the KFC robbery earlier that night, stopped the car after a brief chase. Before Cicero could exit his cruiser, however, Jones, the driver of the car, fled through a backyard, at which point the defendant, who was in the backseat, got into the driver's seat. With his gun drawn, Cicero stopped the defendant and Kerr but was unable to stop Jones. Thereafter, the defendant and Kerr were detained until a West Hartford police officer arrived at the scene with KFC employees Hamilton and Rudolf Gordon. Because employees from the KFC could not positively identify either the defendant or Kerr as the masked men who had participated in the robbery, the two men were not arrested that night. Kinnane, however, identified the defendant's car as the car that she had seen earlier that night on Stanwood Avenue. The police then impounded the defendant's car.

Approximately two weeks later, on October 1, 2003, a 1996 dark green Nissan Maxima was stolen by Bazemore to be used in another robbery. That night, the defendant, Kerr, Bazemore and Jones drove in that car to a CVS on Blue Hills Avenue in Hartford, where they all had agreed to commit an armed robbery. After arriving at the store, Kerr, whose gun had been lost, remained in the car with Bazemore while the defendant and Jones entered the CVS armed with pistols at about 8 p.m.

during business hours. Once inside the store, the defendant and Jones covered their faces with T-shirts. Jones immediately went to the cash register where he encountered the store clerk, Nichole Smalls, who was the defendant's sister. At gunpoint, Jones demanded money from the registers. While Jones collected the money from Smalls' register, the defendant stopped three customers at gunpoint: Chayra Rodriguez; her sister, Jasmine Rodriguez; and Jasmine Rodriguez' eighteen month old son, Brian Harara. The defendant ordered the women to give him all of their money. Jasmine Rodriguez and Chayra Rodriguez then gave the defendant their money after the defendant threatened to shoot Harara as he held a gun to the child's head. After taking the money, the defendant and Jones left the store and got back into the Maxima to join Kerr and Bazemore. With Bazemore driving, they left the scene. The four men later abandoned the Maxima on Colebrook Street near Cornwall Street in Hartford and went to Bazemore's nearby residence to divide the proceeds equally and to change clothing.

Both robberies were successfully recorded by store surveillance cameras.

After the completion of evidence by the state, the defendant moved for judgments of acquittal on all charges. The court denied the motions. After the jury found the defendant guilty of all charges, the court sentenced the defendant to twenty years imprisonment. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the defendant claims that the state failed to produce sufficient evidence to prove his guilt beyond a reasonable doubt as to any of the charged crimes. The defendant contends that Jones' testimony, which was vital to the state's case, was not credible as a matter of law because the testimony "was inconsistent . . .

and . . . was not corroborated by other credible evidence . . . ." This claim merits little discussion.

"The standard of review we apply to a claim of insufficient evidence is well established. . . . [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 402, 902 A.2d 1044 (2006). "In conducting our review, we are mindful that the finding of facts, the gauging of witness credibility and the choosing among competing inferences are functions within the exclusive province of the jury, and, therefore, we must afford those determinations great deference." (Internal quotation marks omitted.) *State* v. *Leggett*, 94 Conn. App. 392, 398, 892 A.2d 1000, cert. denied, 278 Conn. 911, 899 A.2d 39 (2006).

It is well established that "[q]uestions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Keith B.*, 95 Conn. App. 643, 649, 897 A.2d 725, cert. denied, 279 Conn. 907, 901 A.2d 1227 (2006).

The following additional facts are relevant to our resolution of the defendant's claim. At trial, Jones testified as a witness for the state. Jones recalled that, on or about September 15 and October 1, 2003, he, the defendant, Kerr and Bazemore needed money and agreed to steal a car and to rob the KFC and the CVS.

After arriving at the KFC, Jones testified, the defendant concealed his face with a "Jason mask" and entered the store with a nine millimeter automatic weapon. Jones, who also had a pistol, testified that he went to a cash register and demanded that it be opened, while the defendant looked for the manager. Jones testified that before the CVS robbery, the defendant had discarded his "Jason mask" after he saw a picture of himself wearing the mask on the television news. Instead, Jones testified that during the CVS robbery, the defendant wore a T-shirt over his face but carried the same nine millimeter pistol. While testifying, Jones referred to the KFC and the CVS security videotapes. There was additional testimony at trial that, at the KFC robbery, money was taken at gunpoint from cash registers by Jones and by the defendant and, at the CVS robbery, money was taken at gunpoint from a cash register by Jones. There also was testimony that, at the KFC robbery, money was taken from an employee by the defendant and, at the CVS robbery, from customers by the defendant.

In the present case, the defendant has not demonstrated that it was unreasonable for the jury to have relied on Jones' testimony. During trial, the defendant, through cross-examination and argument, attempted to discredit the testimony of Jones.[2] The arguments raised by the defendant on appeal with regard to Jones' credibility are arguments that the defendant properly made before the jury and were properly considered by the jury in determining what weight to afford Jones' testimony. See *State* v. *Osoria*, 86 Conn. App. 507, 515, 861 A.2d 1207 (2004), cert. denied, 273 Conn. 910, 870 A.2d

[2] During trial, Jones testified that in exchange for testifying against the defendant, Kerr and Bazemore, the state would recommend that Jones receive a sentence of twenty years incarceration, with execution of the sentence suspended after four and one-half years for a number of armed robberies.

1082 (2005). "The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *State* v. *Keith B.*, supra, 95 Conn. App. 649. Accordingly, we conclude that Jones' testimony was properly before the jury and, when considered in light of the other testimony introduced at trial, provided an evidentiary basis for conviction. There was evidence at trial from other witnesses to the effect that, shortly after the KFC robbery, the defendant was found by the Hartford police in his automobile with Kerr and a third party, who had escaped capture,[3] after the defendant's automobile was used by four men who had abandoned the stolen Maxima with its motor running and its lights turned off.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[3] Jones testified that after he left Bazemore's residence with the defendant and Kerr, he escaped from the defendant's automobile after it was stopped by the police.